PER CURIAM.
C.D.S. (“the father”) appeals a purported judgment entered by the Houston Juvenile Court on July 20, 2006, in its cases docketed as case no. JU-06-18 and case no. JU-06-19 insofar as that judgment (1) awarded K.S.S. (“the mother”) primary physical custody of one of the parties’ minor children, namely R.P.S., and (2) ordered the father to pay the mother’s attorney an attorney’s fee in the amount of $4,325 together with costs in the amount of $455.62. The father also appeals a contempt judgment entered against him by the Houston Circuit Court in its case docketed as case no. DR-03-752.02, a case that was later transferred to the juvenile court and consolidated with case no. JU-06-18 and case no. JU-06-19. Because we lack jurisdiction, we dismiss the father’s appeal with instructions to the juvenile court.
The record on appeal does not contain any pleadings or orders dated earlier than August 9, 2005; however, the juvenile court’s purported judgment recites that the Houston Circuit Court entered a judgment divorcing the father and the mother on January 18, 2005. The juvenile court’s purported judgment further recites that, in accordance with a settlement agreement entered into by the parties, the divorce judgment awarded the parties joint legal custody of their two daughters, K.S., who was born in September 1991, and R.P.S., who was born in October 1997; awarded the father primary physical custody of both daughters; and awarded the mother visitation.
The first pleading in the record on appeal is a petition (“the contempt petition”) the mother filed with the Houston Circuit Court on August 9, 2005, seeking an order finding the father in contempt for, among other things, allegedly interfering with her visitation rights. The contempt petition also sought pendente lite custody of the children. The circuit court docketed the postdivorce proceeding initiated by the mother’s contempt petition as case no. DR-03-752.02. On August 11, 2005, the circuit court entered a pendente lite order stating, in pertinent part, “that [the mother] shall become the primary physical custodian of her minor child [R.P.S.] ... for court ordered visitation.... ”
Answering the mother’s contempt petition on August 31, 2005, the father denied that he was guilty of contempt. The father also counterpetitioned the circuit court to suspend the mother’s visitation rights based on his allegations that, among other things, the mother had inappropri *127 ately taken baths with the younger daughter, had used foul and abusive language in addressing the children, and had prevented the children from talking to the father on the telephone when the children were visiting the mother.
The circuit court held a hearing on the mother’s contempt petition on September 1, 2005. On September 9, 2005, the circuit court entered an order deferring a ruling regarding the mother’s contempt petition, revising the mother’s visitation schedule with respect to the older child, and requiring the parties to attend counseling.
On December 12, 2005, the mother amended her contempt petition to request, among other things, that the circuit court modify the divorce judgment to award her primary physical custody of the children. That same day, the circuit court entered an order awarding the mother temporary custody of the children from December 17, 2005, until December 24, 2005. On December 16, 2005, the circuit court appointed attorney Amy Shumate to serve as the children’s guardian ad litem.
On January 13, 2006, the guardian ad litem filed petitions with the Houston Juvenile Court seeking a finding that the children were dependent. The guardian ad litem based her petitions on the allegations of misconduct the mother and the father had made against one another in the circuit court proceeding. The juvenile court docketed the dependency proceedings initiated by the guardian ad litem’s petitions as case no. JU-06-18 and case no. JU-06-19.
On January 17, 2006, the circuit court received additional ore tenus evidence regarding the mother’s contempt petition and also received ore tenus evidence regarding the father’s counterpetition seeking the suspension of the mother’s visitation rights. On January 19, 2006, the circuit court entered an order stating, in pertinent part:
“Upon hearing the testimony, the court finds that the said minor children, [K.S. and R.P.S.,] are the subject of serious controversy between their parents regarding visitation for the mother, [K.S.S.], which is causing emotional harm to the said children.
“THEREFORE, the court finds that the children are dependant and temporary custody is hereby placed with the Department of Human Resources.[1]
“The Court further finds that the father, [C.D.S.,] is in contempt of this court’s order for willfully failing to abide by this court’s visitation orders of September [9], 2005 and December [12], 2005.
“Costs, attorney’s fees and guardian ad litem fees are taxed to [the father], [The mother’s] attorney and [the guardian ad litem] to file affidavits of attorney’s fees within 30 days of the date of this order.
“The court reserves jurisdiction to assess further sanctions.”
That same day, the circuit court, acting ex mero motu, entered another order transferring case no. DR-03-752.02 to the juvenile court.[2]
*128 On February 2, 2006, the father challenged the circuit court’s January 19, 2006, order finding the children to be dependent and finding him in contempt by filing a Rule 59, Ala. R. Civ. P., motion with both the circuit court and the juvenile court. The father’s motion also challenged the circuit court’s separate January 19, 2006, order transferring the case to juvenile court. The circuit court transferred to the juvenile court the Rule 59 motion the father had filed with the circuit court. On March 14, 2006, the juvenile court heard the father’s Rule 59 motion and conducted a review of the children’s custody arrangements. That same day, the juvenile court entered an order returning physical custody of the children to the father; maintaining legal custody in the Department of Human Resources (“DHR”); and denying, as moot, the guardian ad litem’s petitions to find the children dependent. On March 17, 2006, the juvenile court entered another order reiterating the rulings in its March 14 order and, in addition, denying the father’s Rule 59 motion challenging the orders of the circuit court finding the children to be dependent, finding the father to be in contempt, and transferring the circuit court case to the juvenile court.
The juvenile court then held a hearing on July 18, 2006, regarding the mother’s petition seeking a modification of custody. After receiving ore tenus evidence, the juvenile court entered a purported judgment on July 20, 2006. That purported judgment states, in pertinent part:
“Upon ... hearing the testimony and considering the evidence adduced herein and the evidence in prior hearings of this court, the court finds that the mother’s petition is due to be granted.
“The court finds that the father has continued in a pattern of conduct to alienate the affections of the children from their mother by emphasizing the flaws and shortcomings of the mother such that the mother cannot discipline the children when in her presence. He has succeeded in the alienation of the oldest child, [K.S.], and it would be detrimental to her emotional well-being for her to be forced to visit her mother. Therefore, DHR is relieved of custody of [K.S.] and she [is] remanded to the custody of her father.
“The court finds that the father is not a fit and proper person to have custody of [R.P.S.] and that it would be detrimental to her emotional well-being should the child continue to be placed with him. Therefore, DHR is ordered to remove the child from [the] father’s home and place the child with [the] mother.... Upon removal of the child to the home of the mother, DHR is relieved of custody and the child is remanded to the custody of mother, [K.S.S.]
“The parties, their families and the children shall not have any further contact with each other except through their attorneys and the guardian ad li-tem. At such time that the parties and families feel that they can cooperate, then the court will consider verified petitions for visitation.
“The court finds that the father has willfully violated the visitation orders and decrees of this court and has literally thumbed his nose at this court’s orders.
“The father is ordered to pay to mother’s attorney the sum of $455.62 as costs and the further sum of $4,325 as reasonable attorneys fees within 30 days of this order.”
On July 24, 2006, the father appealed to this court. The next day, the father moved this court to stay the execution of the juvenile court’s purported July 20, *129 2006, judgment pending resolution of his appeal; this court granted that motion.
On July 28, 2006, the guardian ad litem petitioned the juvenile court to enter an order determining the physical custody of R.P.S. pending resolution of the father’s appeal. In response to that motion, the juvenile court entered an order on August 3, 2006, awarding legal custody of R.P.S. to DHR and awarding physical custody to the mother.
The father then moved this court to vacate the juvenile court’s August 8, 2006, order. After receiving responses to the father’s motion to vacate from the mother, DHR, and the guardian ad litem, this court entered an order that, among other things, granted the father’s motion to vacate the August 8, 2006, order and ruled that the juvenile court’s March 14, 2006, order should govern the custody of the children pending the resolution of this appeal.
On appeal, the father first argues that the juvenile court, in its purported judgment of July 20, 2006, erred in transferring custody of R.P.S. to the mother and in awarding an attorney’s fee to the mother’s attorney. Because “[a] void judgment will not support an appeal,” Carter v. Hilliard, 838 So.2d 1062, 1064 (Ala.Civ.App.2002), however, we must first determine whether the juvenile court’s purported July 20, 2006, judgment is a valid judgment.[3] Because a judgment is void if the court that entered it lacked subject-matter jurisdiction, see Clark v. Clark, 682 So.2d 1051, 1052 (Ala.Civ.App.1996), we must determine whether the juvenile court had subject-matter jurisdiction over the parties’ dispute when it entered its purported judgment of July 20, 2006, in order to determine whether that judgment is valid.
Before the guardian ad litem filed her dependency petitions with the juvenile court, the circuit court, by virtue of the parties’ divorce action, had continuing subject-matter jurisdiction over custody issues to the exclusion of the juvenile court. See Ex parte K.S.G., 645 So.2d 297, 299 (Ala.Civ.App.1992) (“[Subject to two exceptions,] when a circuit court acquires jurisdiction over the issue of child custody pursuant to a divorce action, it thereafter retains jurisdiction over that issue to the exclusion of the juvenile court. P.R.G. v. W.P.R., 590 So.2d 913 (Ala.Civ.App.1991); Taylor v. State, 448 So.2d 397 (Ala.Civ.App.1984).”). An exception to the exclusive continuing jurisdiction over custody issues conferred on a circuit court by the parties’ divorce action occurs “when there are emergency circumstances which threaten the immediate welfare of the child....” Ex parte K.S.G., 645 So.2d at 299. When those circumstances are alleged, the juvenile court’s subject-matter jurisdiction over custody issues is concurrent with the continuing jurisdiction over custody issues conferred upon the circuit court by the parties’ divorce action. See Ex parte K.S.G., 645 So.2d at 299; and Walters v. Taylor, 513 So.2d 640, 641 (Ala.Civ.App.1987). Furthermore, “[b]y statute, the juvenile court has exclusive original jurisdiction in proceedings in which a child is alleged to be dependent, § 12-15-30(a), [Ala.] Code 1975.”[4] Ex parte K.S.G., 645 So.2d at 299. Thus, in the case now before us, the filing with the juvenile *130 court of the guardian ad litem’s dependency petitions, which alleged circumstances constituting an emergency with regard to the emotional welfare of the children, not only conferred upon the juvenile court exclusive original subject-matter jurisdiction over the dependency proceedings initiated by those petitions but also conferred upon the juvenile court subject-matter jurisdiction over custody issues that was concurrent with the continuing subject-matter jurisdiction over custody issues conferred upon the circuit court by the parties’ divorce action.
However, the juvenile court’s denial of the dependency petitions on March 14, 2006, not only terminated the dependency proceedings, but also constituted a determination on the allegations of circumstances constituting an emergency with regard to the emotional welfare of the children. Those allegations were the sole basis for the juvenile court’s concurrent jurisdiction over custody issues under the circumstances of this case.[5] Thus, when it entered its purported judgment on July 20, 2006, the juvenile court did not have subject-matter jurisdiction over the parties’ custody dispute, and, therefore, that purported judgment is void.
Under the circumstances of this case, the only court that had subject-matter jurisdiction over the parties’ custody dispute after the juvenile court denied the dependency petitions was the circuit court. Consequently, the juvenile court should have transferred case no. DR-03-752.02 back to the circuit court for it to adjudicate the custody dispute in accordance with the standard enunciated by the Alabama Supreme Court in Ex parte McLendon, 455 So.2d 863 (Ala.1984), instead of proceeding further.
Because the juvenile court’s purported July 20, 2006, judgment is void, we dismiss the father’s appeal insofar as it seeks review of the purported July 20, 2006, judgment of the juvenile court, and we direct the juvenile court (1) to set aside its purported judgment of July 20, 2006, and (2) to transfer case no. DR-03-752.02 back to the circuit court for it to adjudicate the custody dispute in accordance with the McLendon standard.
The father also argues that the circuit court erred in finding him in contempt in its January 19, 2006, order. However, this court does not have jurisdiction to review that finding of contempt because it was a final, separately appealable judgment, see Gladden v. Gladden, 942 So.2d 362, 370 (Ala.Civ.App.2005); and Thomas v. Vanhorn, 876 So.2d 488, 491 (Ala.Civ.App.2003), from which the father did not *131 file a timely appeal — the father did not file a notice of appeal within 42 days of the denial of his Rule 59 postjudgment motion challenging that finding of contempt. See Rule 4(a)(1) and (3), Ala. R.App. P. Although in Christian v. Christian, 738 So.2d 1275 (Ala.Civ.App.1999), this court held that a finding of contempt was not a final, separately appealable judgment, our subsequent decisions in Thomas v. Vanhorn and Gladden v. Gladden implicitly overruled Christian v. Christian but did not expressly do so. We take this opportunity to expressly overrule Christian v. Christian.
“ ‘The timely filing of a notice of appeal is a jurisdictional act.’ Rudd v. Rudd, 467 So.2d 964, 965 (Ala.Civ.App.1985); see also Rule 2(a)(1), Ala. R.App. P.” R.M. v. J.D.C., 925 So.2d 970, 972 (Ala.Civ.App.2005). Thus, the father’s failure to timely file a notice of appeal from the circuit court’s January 19, 2006, judgment finding him in contempt deprives this court of jurisdiction to review that contempt judgment. Accordingly, we dismiss the father’s appeal insofar as it seeks review of that contempt judgment.
Finally, the mother has moved this court to strike certain documents that are appended to the father’s brief on the ground that those documents are outside the record on appeal. Because we dismiss the father’s appeal, the mother’s motion to strike is moot.
APPEAL DISMISSED WITH INSTRUCTIONS TO THE JUVENILE COURT.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. The circuit court did not have subject-matter jurisdiction to find the children dependent. Section 12-15-30(a), Ala.Code 1975, provides that "[t]he juvenile court shall exercise exclusive original jurisdiction of proceedings in which a child is alleged to be ... dependent....”

. The Houston Circuit Court judge to whom case no. DR-03-752.02 was then assigned is also designated to serve as the Houston Juvenile Court judge.

. Although neither party has raised an issue regarding this court's jurisdiction, " jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.’ " Wallace v. Tee Jays Mfg. Co., 689 So.2d 210, 211 (Ala.Civ.App.1997) (quoting Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987)).

. Although the Houston Circuit Court judge presiding over the parties' circuit court action is also designated to serve as the Houston Juvenile Court judge, the circuit court did not *130 have jurisdiction to find the children dependent as it purported to do in its January 19, 2006, order. Because the circuit court lacked subject-matter jurisdiction to find the children dependent, its finding of dependency is void. See Clark v. Clark, 682 So.2d at 1052.

. The circuit court's transfer of case no. DR-03-752.02 to the juvenile court could not confer upon the juvenile court the continuing subject-matter jurisdiction regarding custody conferred upon the circuit court by the parties' divorce action. Moreover, although in this instance the juvenile court judge is a circuit court judge and Rule 2(F), Ala. R. Juv. P., states that "[wjhen the juvenile judge is a circuit judge, the juvenile court shall have and exercise full jurisdiction and power of the juvenile court and of the circuit court of the state” (emphasis added), we do not read that rule of procedure as purporting to enlarge the subject-matter jurisdiction conferred upon the juvenile court by § 12-15-30, Ala.Code 1975. See Ala. Const.1901, Amend. No. 328, § 6.11 (now Art. IV, § 150, Ala. Const.1901 (official recomp.) )(”The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts ....”) (Emphasis added.)